24CA2111 Peo in Interest of Thomas 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2111
Pueblo County District Court No. 24MH30119
Honorable Timothy O'Shea, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Antonious W. Thomas,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Tow and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Antonious W. Thomas appeals the district court's order authorizing the involuntary administration of antipsychotic and mood-stabilizing medications. We affirm.

## I. Background

¶ 2 Thomas was committed to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed in a criminal case. He was diagnosed with an unspecified mood disorder marked by erratic behavior, impulsivity, aggression, pressured speech, and irritability. Thomas refused all medications, but after multiple incidents of threatening and assaulting staff and peers, staff started Thomas on an emergency course of Zyprexa, an antipsychotic, and Depakote, a mood stabilizer. At the request of CMHHIP staff psychiatrist Dr. Hareesh Pillai, the People then petitioned the district court to authorize the involuntary administration of Zyprexa and Depakote.

¶ 3 The district court held an evidentiary hearing at which Dr. Pillai and Thomas testified. Dr. Pillai explained Thomas's disorder and accompanying symptoms. And he described the requested medications, their possible side effects, and their necessity in treating Thomas's symptoms.

1

¶ 4 Thomas denied having a mental illness. He also described the side effects he had experienced since taking the requested medications and his general preference not to take any medication.

¶ 5 Finding that Dr. Pillai testified "credibly and persuasively," the court granted the petition and entered an order authorizing the involuntary administration of Zyprexa and Depakote.

II. Legal Principles and Standard of Review

¶ 6 An involuntarily committed person retains the right to refuse treatment. *See People v. Medina*, 705 P.2d 961, 971 (Colo. 1985). Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

(1) the patient is incompetent to effectively participate in the treatment decision;

(2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution;

(3) no less intrusive treatment alternative is available; and

(4) the patient's need for treatment by antipsychotic

medication is sufficiently compelling to override his bona fide

and legitimate interest in refusing treatment.

*Id.* at 973.[1]  We determine whether the evidence, viewed as a whole

and in the light most favorable to the People, is sufficient to support

the court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  A

physician's testimony alone may be sufficient to satisfy the *Medina*

test.  *Id.* at ¶ 30.

¶ 7        Applying the *Medina* test presents a mixed question of fact and

law, meaning we defer to the district court's factual findings if

supported by the record but review its legal conclusions de novo.

*People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  It's for the district

court, as the fact finder, to determine witness credibility; the

sufficiency, probative effect, and weight of the evidence; and the

inferences and conclusions to be drawn from it.  *Id.*

---

[1] A different test applies to petitions to administer involuntary medication solely to restore competency.  *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But the parties don't dispute that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the medications is to prevent Thomas from harming others and to prevent a significant and long-term deterioration in his mental condition.  *See Sell*, 539 U.S. at 181-83.

## III.     Discussion

¶ 8      Thomas doesn't contest the district court's findings on the first and second *Medina* elements.  But he contends that the People didn't present sufficient evidence to prove the third and fourth *Medina* elements.  We disagree.

### A.     The Third *Medina* Element

¶ 9      The third *Medina* element requires a court to determine that no less intrusive alternative to the proposed medication is available. *Medina*, 705 P.2d at 973.  This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Id.* at 974.  A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011).

¶ 10     Thomas contends that there is a less intrusive alternative to the proposed treatment because he had previously and successfully been treated with Zyprexa alone and the proposed addition of

4

Depakote was based on "physician speculation" instead of his "treatment history."

¶ 11    True, Dr. Pillai testified that during a previous hospitalization, Thomas was treated with just Zyprexa. But Dr. Pillai also testified that during the present hospitalization, Thomas's behaviors were "much more severe" and "unmanageable by staff members," which is why "both a[n] antipsychotic and mood-stabilizing agent are necessary." Particularly, Dr. Pillai described "repeated incidents where [Thomas] required assault precautions and severe assault precautions" and "engag[ed] in activities like threatening staff, throwing urine at staff, and assaulting others."[2]

¶ 12    Crediting this testimony, the district court found that while Thomas had been successfully treated in the past by Zyprexa alone, his "severe behaviors warrant Depakote in addition to the Zyprexa." Therefore, the court found that "a less intrusive treatment alternative is not available."

---

[2] Dr. Pillai indicated that Zyprexa and Depakote were currently necessary to treat Thomas, but if he showed improvement on "any" of the medications, Dr. Pillai would "try to decrease either [medication] and try him on monotherapy with one of the two."

¶ 13    Thus, we conclude that sufficient evidence supports the court's finding on the third *Medina* element.

### B.    The Fourth *Medina* Element

¶ 14    In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 15    Thomas contends that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in avoiding severe side effects by refusing treatment.  More specifically, he claims that the district court didn't properly weigh his interests against the state's because it didn't consider his underlying respiratory condition (COPD) and "minimized" his side effects.

¶ 16    We acknowledge Thomas's legitimate concern regarding potentially harmful side effects.  But the district court plainly found

6

that, given "his belief system," Thomas had a bona fide and legitimate interest in refusing treatment because he "does not believe in taking prescription medications" and "there's a price to pay on the other end" in that "you may suffer some side effect that's undesirable." And the court acknowledged Thomas's testimony "about being sluggish," which the court recognized was "a side effect of [the] medications he's taking." Thus, though the court didn't specifically mention Thomas's COPD or all his stated side effects, the court implicitly considered this evidence.

¶ 17 But even if we assume the court's findings could have been more robust, the record nevertheless supports the court's conclusion. Concerning his COPD, Thomas testified that the requested medications caused him "breathing" problems and "fatigue[]." However, Dr. Pillai testified that "Zyprexa and Depakote would be unlikely to worsen" his COPD. And in the two weeks Thomas had been taking Zyprexa and Depakote on an emergency basis, despite falling once "due to the acute sedative properties of the immediate intramuscular injection," Dr. Pillai testified that Thomas had "tolerated [the medications] relatively well without overt side effects." Dr. Pillai explained that Thomas's vital signs

had "not shown any discrepancies in his respiratory rate or his oxygen saturation" and that the doctor expected any dizziness or sluggishness Thomas had experienced to improve as Thomas's "body develops a tolerance to that aspect of the medications."

¶ 18    Beyond this, Dr. Pillai testified that Thomas's medical team would closely monitor his COPD and side effects by patient observation, lab work, vital signs, and physical examinations. He testified that additional medications were available to neutralize some of the side effects. And Dr. Pillai opined that (1) the need to treat Thomas with the requested medications outweighed the risk of side effects, even considering his underlying medical condition; (2) no alternative treatment would be both as effective and less intrusive than the requested medications; (3) without the medications, there would be a significant and long-term deterioration in Thomas's mental condition; (4) without the medications, Thomas poses a serious risk of harm to others (and had already repeatedly "required assault precautions and severe assault precautions" at the hospital); and (5) Thomas had no insight into his mental condition, and his refusal to take the medications was irrational and unreasonable.

¶ 19    We therefore conclude that sufficient evidence supports the court's finding that the need to treat Thomas and protect others is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment.

## IV.   Disposition

¶ 20    The order is affirmed.

JUDGE TOW and JUDGE MEIRINK concur.